May it please the Court, I'm Clay Smith, the Deputy Attorney General representing Appellant Wasden in his appeal. By way of housekeeping, counsel for the appellants have agreed to divide the time to 20 minutes, 15 minutes for the Wasden case, 5 minutes for the Inland Pacific intervention case. The Attorney General's appeal presents three issues. I don't intend to hold you strictly to the limits. This is a somewhat difficult case and don't worry about taking a couple of minutes over. Thank you, Your Honor. The Attorney General's issue presents three fundamental issues. The first is an ex parte young-slash-mutinous question directed to the Trade Council's challenge to the Open Access Act. As we explain in our opening and reply briefs, subsequent to the filing of the Notice of Appeal, the Idaho Legislature adopted a statute which Does this issue go only to the Contracting Act? That's correct. And we just got the other day a document indicating that Judge Wimbley was willing to entertain a limited remand or an indicative ruling. Does that make a difference with regard to adding another defendant? Well, it certainly would make a difference if Administrator Mason were added because it would eliminate the ex parte young issue that we've raised. What possible reason would we have for not having him added either here or through a remand because otherwise we're just going to get another lawsuit and start all over again? Well, as we've explained in our briefing last summer to the Circuit and then again in our briefing to Judge Wimbley on the 6201 motion, we do not believe this Court has appellate jurisdiction to simply add Administrator Mason as a defendant. Because? Because, as the Supreme Court made clear in Summers v. Earth Island Institute, the authorization in Rule 15, which, excuse me, in Rule 21, which this Court relies upon, by Rule 21 I mean the Federal Rules of Civil Procedure 21, has no application once a judgment has been filed. Well, I assume you're right. Why shouldn't we remand for the limited purpose of adding a defendant to solve the ex parte young problem? Your Honor, we believe that the addition of Administrator Mason will not materially advance the... Well, I understand that from your papers, and so it leads me to my real question, which is who is the correct defendant in this case? Let's assume that the Trade Council or that the plaintiffs in this case have been injured, and they want to sue somebody to remedy the injury. And I know you have a standing argument, but assume a way of standing for a second. Who is the correct defendant? Well, the correct defendant would be someone who, in fact, with respect to the Open Access Act, has indicated a willingness to include a project labor agreement requirement in the state agency or local government's bid specifications. Well, but these folks claim that a state law is preempted by Federal law, at least with respect to the Open Access one. And they would like to enjoin somebody, some state official, from applying that law. Who is the correct state official? Is there no one? The issue is not whether or not. The issue is not the appropriate official generally. The issue really is, is there a ripe controversy? I understand. And I've asked you to assume standing and ripeness. So assuming standing and ripeness for a second, tell me who they sue. Well, they would sue whoever is responsible for issuing the bid specifications that they believe should have included a project labor agreement. That gives me some difficulty, because we have a municipality or a state agency, and they issue a bid specification without a PLA in it, as is surely their right. There's nothing that requires them to put a PLA in it. And you sue that municipality, and they say, we don't care. We're just following the state law. Who defends the state law under those circumstances? Surely the AG does, doesn't it? Actually, Your Honor, no. Again, it depends on who exactly has been sued, but very likely if it's, for example, a school district or perhaps a boy scout. Why should that school district defend a law that it has no interest in? The school district says, we've just chosen in this case not to put this requirement in. We don't care to defend it or not defend it. It's not our job. It's the state law. Who defends it? Again, Your Honor, it would be, in that instance, the county prosecutor. If the county, excuse me, the school district declined to defend the statute for whatever reason, at that point, the state might intervene. I thought you said a moment ago, when I asked you, that the administrator of public works, if he were added, would be a proper defendant. That's correct. But you're now telling Judge Hurwitz that he wouldn't be a proper defendant. Well, in my previous response, I said if there were a ripe controversy with respect to the statute. So in other words, your argument about him is strictly a ripeness and standing argument. It's not that he wouldn't be a proper defendant if there were a ripe controversy. That's correct. All right. So do you want to talk about your ripeness and standing argument? Certainly. In this instance, the only defendant remaining is the attorney general. In fact, he was the only defendant named. Well, let's assume that, one way or another, the administrator of public works comes in. Then what? Well, then we would argue ripeness in the sense that there is, at this point, no basis to believe that the administrators engaged in any conduct that has injured the trades council or its affiliates. At that point, the question would become whether under prudential or, for that matter, Article III likeness considerations, the district court had jurisdiction. We would argue, in that instance, the district court did not. And what I find frustrating about your position in this is that it essentially is this. We've passed a statute. It may or may not be preempted by federal law, but you can never sue anybody to establish that because no one will be to blame for enforcing the statute. Isn't that a fair summary of your position? I believe it is with one caveat or with one proviso. And the proviso is if, in fact, the person sued, the entity or the official sued, would never have included a project labor agreement in bid specifications, regardless of the existence or non-existence of the statute. Well, you're never going to know that. I mean, there's some merging here of the merits and the standing argument because as I understand their merits argument is what they're claiming they have is a right to attempt to persuade the person. And if that person has no flexibility because the state law doesn't allow it, then they don't have the right to attempt to persuade them, and that they claim is interfering with their NLRA rights. Now, that may be true or it may not be true, but it's not a standing argument. Right? In other words, it's the merits. So if their argument is we have a right to deal with a public contracting official who is not inflexibly bound by state law and can make the decision based on the state's interest rather than on a preexisting prohibition based on labor considerations, and that's our merits argument, then why don't they have the right to present that argument? Well, again, it goes back to whether there is a controversy that is simply more than... I'm saying, I'm saying why isn't that a suitable controversy? Because it's really... That the person, at that point, the defendant, the hypothetical defendant who's not here yet, would be saying, well, I can't listen to you, and I can't make a decision based on the merits of the economics of this because I'm not allowed to by state law. Why isn't that a sufficient controversy? Well, it might be a sufficient controversy if those were the facts, but we don't have those facts here. There's never been a request so far as we know since the statute... There's never been a request, and that's the issue. Yes. I mean, this matter is decided on summary judgment. The facts, essentially, are this with respect to that particular statute. The Trade Council believes it's unconstitutional. The Trade Council made no showing that they've ever made a request to either a state official or a local government official to include a project labor agreement in the specifications. That means, indeed, they, being the Trade Council, made no showing that there has ever been a project labor agreement included in a state or local government bid specification. So, in your view, if they were to request one and the governmental entity followed the law and denied the request, would that confer standing? Yes. Without regard to whether or not the entity denied the request simply because it wasn't interested in a PLA or because it thought it was bound by state law? Well, the answer, I think, is still yes, although I think the Court's careful parsing of the reasons is something that we'll come back to in discussing the merits of the open access plan. Unless one of my colleagues wants to hector you further on the standing issue, why don't you move on to the merits? I'd be more than willing to. The other two issues in the case obviously go to the merits of the two statutes. And the first statute, of course, is the Open Access Contracting or Open Access to Work Act that... Doesn't the name of that statute, just its name, as well as all the legislative history which I've now read, indicate that the concern was a concern about a direct labor relations concern? It was not a concern about the contracting process. It was a concern about the access of non-union contractors and employees, perhaps with a misconception about how the non-union employees might get jobs, on public contracting projects and not a concern about the best way to perform these projects? And does that matter? Well, I don't think it matters, but I also disagree with your characterization. No, but whether it matters, because the first part seems highly debatable to me at least, and more likely that this isn't a very good market participant situation. So why does it matter? Why doesn't it matter? Well, it doesn't matter because, Judge Bazan, you're absolutely correct. It is not a market participant situation. It's a situation where there is simply no regulation at all. The Trades Council essentially gives the court a false choice. Either the statute is justified under the market participation doctrine or its regulation. There's obviously a third category, and that third category is where there's simply no regulation at all. In this instance... Well, it seems pretty clear that they're not regulating the subdivisions. The state can't regulate subdivisions, so that's not regulation. But why isn't it regulation of the way in which private employers in the construction industry and their workers interact? If there is, if that can be, if a project labor agreement can only be accomplished as a practical matter, and I guess this is the question of whether there's a record on this, with the government's participation. If the government's the owner. But the owner's participation, whoever the owner is, and if the owner is the government, even if the private general contractor and the private union want to enter into such an agreement, which is at least machinist protected, why, but they can't, can they do that without the government's involvement? Yes. Well, I mean, on the facts of Boston Harbor it was interesting, because it appears in Boston Harbor that the construction manager first came up with this idea, but that at least the way Massachusetts bidding operated, it appeared that he could not, that entity could not enter into the agreement unless it was in the bid specifications. Is that true in Idaho? I don't know if, I'd probably have to go back and look at the record. I'm not sure it's reflected clearly in the opinion of the Supreme Court itself. But it appears that the contract manager made a recommendation to its principal, which was the Massachusetts Water Resources Authority, and to include in the bid specifications a project labor agreement provision. Because it appears that there was some reason why,  in other words, that the bid specification had to have this requirement or it couldn't operate. In other words, that if it wasn't in the bids, it wouldn't have been allowed. Do we know whether this is true in Idaho or not? I don't know if it's true from reading the opinion, Your Honor. No, no. I think what Judge Berzon's interested in, I am too, is there a Idaho prohibition on absenteeist law on PLAs in the absence of them being specified in the bid requirements? No, there isn't. And that's a point we've made repeatedly, both before Judge Winmill and before this Court, in which I do not believe is contested. Yeah, put aside the practical issues, which I want to ask you about in a second. But as a legal matter, there would be nothing to prohibit the union from entering into a PLA with a contractor, even on a public works project. Is that correct? That's correct. Okay. Now, what about the practical issues? Does the record indicate anything about whether or not it's practically possible to have one of these in the absence of them being in the bid specification? No, the record doesn't reflect anything on that score. But frankly, the reason it doesn't is because it's really, from our perspective and perhaps from the Trade Council's perspective, irrelevant to the constitutionality or the non-preemption of the Open Access Act. Again, it goes back to this whole question of whether there is regulation. And in the Boston Harbor context and in every other instance where market participation has been used either as a rationale for allowing certain state actions to go forward or to find them preempted, there has been state or local government intrusion into, in this instance, the labor relations or collective bargaining practices. The reason you say there's not regulation is because you say the public entities are indifferent. They're not involved. They don't care about whether a general... Project favor agreements have to involve at least general contractors, if not others, but at least general contractors or construction managers. So your posit is that there could be a general contractor who enters into a project labor agreement or is willing to enter into a project labor agreement with a building and construction trade council and who puts in a bid to a public entity premised on that agreement, and it would be fine. Nobody would care. I mean, he could either get the bid or not get the bid depending on whether he's the lowest bid or lowest responsible bidder, and the existence of this public labor agreement wouldn't matter. Is that the core of why you're saying it's not regulatory? Correct. And so, therefore, the question of whether that is true as a practical matter seems relevant to your position. In other words, if, for example, and I don't know this, can a general contractor enter into a... make bids without regard to who his subcontractors are and what they'll be doing and without spelling out what each subcontractor's rates are, for example? I don't know what a bid looks like is the problem. Well, and the record doesn't reflect the answer to your question, and I, frankly, am not going to venture into that territory because I don't know. I suspect it's just a matter of general speculation, and that's all it is, is that the nature of these projects varies dramatically, and there may be some situations where the general contractor or the bidder, a bidder who would be the general contractor if accepted, would say, I intend to use a project labor agreement. And if that conversation occurred, there would be nothing to preclude the state agency or the local government from entering and from awarding the bid to that contractor, assuming the contractor was the lowest... I'm sorry. Finish. I caught you in a second. Assuming the contractor was the lowest responsive and responsible bidder, which is the standard that is used under Idaho law. One of the issues here is that the reason usually given for project labor agreements is sort of linked to the responsible bidder notion. That is that because of it, there will be fewer work stoppages, fewer problems on the job, and the job will get done more efficiently, making, I suppose, them, quote, more responsible. If the entity, if the public entity cannot take that into account, can the public entity take that into account under the statute? Can the public entity say, well, we're not requiring this, but you know the fact that you have a public labor agreement, a project labor agreement, you know, should go into the question of whether you're the lowest responsible bidder because you're more responsible this way because you're more likely to get the job done. Again, the answer is presumably yes. They could consider that, but what they cannot do, they again being either a state agency or a local government entity, what they cannot do is require that as a condition for bidding. Let me go back to a point I wanted to ask you about. This was a summary judgment case. So is it, what I'm getting from your argument is that it's your position that there may be a material issue of fact about whether or not the prohibition on requiring PLAs in government contracting does impact the ability of unions to negotiate these with contractors. Is that your position? Should we send this back for trial on that issue? No, Your Honor. It's not our position, and it shouldn't go back for trial on that issue. Our position is really quite straightforward, and perhaps it's oversimplified, and I hate to repeat myself, but I shall. But this is not regulation. Precisely. I understand. No, and I guess I'm asking because the previous question was this. What if the only way for unions to be able to enter into these kinds of arrangements which are expressly recognized by the NLRA is if governments require them? Then we might have an impact on their ability to collectively bargain. On the other hand, if, as you suggested before, they're free to enter into them and there's no reason why they can't, there may be no impact at all. And so just to explain why I asked the question, I asked the question to see whether or not we ought to find out in a non-summary judgment setting whether there can be an impact from these on the ability of unions to enter into these arrangements with employers. And again, the answer we believe is no. Okay. I understand your position. And let me leave the non-regulation moment issue for a moment, because I think, Judge Horowitz, your question, such that it was a question, I hope raises what we think is really the key issue here, aside from the fact that it seems to be counterintuitive for there to be regulation where, in fact, there is no regulation at all. And that's the distinct Tenth Amendment or federalism issues raised by the notion that the state or local government has to somehow facilitate entry into these types of agreements. Wait a minute. The argument, as I understand it, isn't that they have to facilitate. It's that they have to deal on a case-by-case, self-interested basis. They don't have to facilitate. But they can't outlaw them for reasons that are regulatory, that whose core purpose, that it does appear to be the case, is a concern about the labor relations on public jobs. Well, first, again, the statute doesn't outlaw project labor agreements. I understand that, but it doesn't provide for, it outlaws requiring them. So it doesn't allow a, on a, even if, in the considered judgment of the government entity owner, that would be the best way to get the job done. Well, certainly it doesn't permit the agency or local government entity to decide on its own that it believes a project labor agreement might be the best situation or the best alternative. Could the government entity, after it receives the bids, decide to consider only those with the project labor agreement because they're the only ones that ensure labor peace? I think the answer lies in, you know, the overall standard that's used in awarding public works contracts, which, again, is the lowest responsive and responsible bidder. There's a provision for construction industry, so that's what you'd have to compare it to. Well, Your Honor, I don't believe you have to compare it to anything. Well, I don't either, but you're the one who suggested that's what you'd have to do. Excuse me? I thought that's what you were suggesting. No, I'm not suggesting that. What's the answer to the question whether the public entity can decide, after it receives the bid, that it's only going to consider those with the PLA because they're the only ones that guarantee labor peace? Again, if the touchstone, and I'm repeating myself, is whether a particular bidder is the lowest responsible and responsive bidder. Your Honor, there has to be no. They can't do that because that's what the statute says, right? No. The statute doesn't say that. That was my point. Put aside construction law for a second. Put aside how one determines who the lowest responsive and responsible bidder is. Does this statute allow them to, at the end of the day, say, we've looked at all these bids and we value labor peace so high, we're only going to consider the ones with PLAs. May they do that under the statute or not? No, they can't say we're only going to consider. What they can do is determine on the basis of the statute. I thought the statute only dealt with bid specifications. Pardon? I thought the statute only dealt with bid specifications as opposed to evaluation. Well, if perhaps ‑‑ I think that is correct. But Judge Runhart's question was helpful to you. That's why I'm rephrasing it. No, but here's my quibble, and it's perhaps it's just a quibble. As I understood the question, it was whether or not the agency could say, well, we're not going to consider these other bids because we so value labor peace. As opposed to considering them all but favoring the ones with PLAs. Well, or concluding using one criterion as labor peace, that a particular bidder is the lowest responsive and responsible bidder. That's my quibble. And with that quibble, let me move back for a moment to the Tenth Amendment, because, again, it's an issue that I think certainly the Trade Council and to a lesser extent perhaps Judge Windmill disregarded. There are three questions. If you wind this up fairly quickly, I think we've gone almost double the time. I'm sorry. Are you going to argue the other statute at all? Pardon? Are you going to argue the other statute at all? I plan to, but I've gone way beyond my time. You've given part of your time to your co‑counsel also, but take a few minutes on the other statute. All right, I shall. And this is really quite straightforward. The issue with respect to the Contracting Act is whether or not the use or whereas we have here a market recovery program or a job targeting program that is funded at least in part from wages earned on Davis‑Bacon statutes. Why is this a state problem? You have nothing to do with Davis‑Bacon. If Davis‑Bacon is on federal jobs, if there's a problem, the federal government can worry about it. Isn't that a very strange reason to call something not preempted because the state has a concern about what's going on in Davis‑Bacon jobs? Well, certainly, there may be a standing issue with respect to claims by individuals under the statute based on the fact that... But, I mean, you seem to be conceding that the statute is preempted except with regard to money that is coming from jobs somewhere else or in Idaho, one or the other, that were Davis‑Bacon jobs. But those jobs are federal government‑funded jobs. They have nothing to do with the state at all. Well, it is perfectly fine. This Court has held both in Brock and the Wage Appeals Board held in the job targeting decision issued in 1991 that the use of any funds which have been derived... I understand that. They're illegal under federal law, but they're not illegal under Idaho law. They have nothing to do with any Idaho state interests or concerns. So what is your problem? Well, the problem, of course, is that those funds can be used to subsidize not only... But in order to say that something that is otherwise preempted is not preempted because there's a state interest,  that your claiming is only justified with regard to something that you have just no local interest in it. It's a federal interest. How can that save you from preemption? Well, Your Honor, you only get to the so‑called local interest exception if you first find that there's arguably protected conduct. And we know that it's arguably protected, at least, because there's... And it seems to me that the only issue is whether there's some serious exception that operates here because it's at least arguably protected. I mean, it's gone back to the Labor Board to decide that question. It hasn't decided the question. And so I don't know how it's not arguably protected. So the question really is whether there's some serious exception here and why would that operate when you have no state interest operating? Your Honor, I'll answer your question and then I will recede. Hopefully, I might have a couple of minutes. My questions made a bunch of assumptions, so they weren't intelligible perhaps before. But that's what I'm concerned about. Well, no, your questions are quite intelligible. Perhaps my responses are not, or at least not satisfactory. I think the answer to your question is that I dispute your premise. And your premise is that this conduct is arguably protected. It's not arguably protected. In what case do you cite for that? Well, we cite, well, there are three cases directly on point. This Court's 1995 decision in Brock, the preceding 1993 decision in Wright. But none of them are about this problem. They're about, first of all, they're not about the NLRA in protection. And second of all, they're about the money coming off the job, not where it's going to after that. Your Honor, I think you're incorrect about that. I think when you read, I can quote if you'd like from Brock, and I can quote from the Wage Appeals Board decision in the job targeting decision, where they make the point that the use of these funds, whether on a Davis-Bacon project or a private project, is inconsistent and inimical to Davis-Bacon. Because it is coming out of the wages. It's not, what's inimical is the fact that the money is coming out of Davis-Bacon wages. And so in that case, in Brock, what was happening was you were suing, the union was suing the covered employees for the money because they hadn't paid the money. And they said, oh, no, you can't get that money. But whether it was illegal having gotten the money and the government not having enforced it, because my understanding is the government, at least at that point, was taking the position that at least for volunteering dues as opposed to from members, they weren't going to enforce it, then if that money is then ultimately used, whether that's separately illegal, I don't know. Anybody's ever decided. Well, you're unlucky. Let me read, and again, then I will assume. You've been on your feet a long time, so I know what Brock says. Let me ask you a very specific question. Doesn't K&M leave this question open? K&M certainly did in the sense that it remanded for a determination. And then the board never got to it when it went back. That's right. So if K&M is directly on point and it leaves the question open, why doesn't it remain arguable? Well, it doesn't remain arguable because Brock makes quite clear, and again, the Wage Appeal Board decision makes quite clear, that the use of funds derived from Davis-Bacon projects. So your premise is that everything that is otherwise illegal for completely different reasons, having nothing to do with the NLRA, becomes unprotected activity. Well, we know that isn't true. For example, some trespass activity is protected. Well, we know from Kingston contractors or constructors that funds illegally collected are, have been deemed by the board to be inimical to public policy, federal policy. The collection part of it, again. Yes. And we also know that in Brock this court held that the use of these funds is inconsistent and contrary to the very purpose of Davis-Bacon, regardless of whether they are used on Davis-Bacon projects or in private projects because they skew the prevailing wage calculation. Thank you. Thank you. Good morning, Your Honors. My name is John Lees. I represent the Applicant in Intervention in Amicus, Inland Pacific Chapter of ABC. If I might, I intend to confine my remarks to the intervention issue, but I think the case that would be directly on point on the issue with regard to the absence of protection under the National Labor Relations Act for market recovery is the J.A. Crowson decision by the National Labor Relations Board that was decided in September of 2012. In that case, the case dealt with market recovery funds coming from state public works but left Kingston constructors alone, which was the previous decision cited by the Attorney General dealing with federal. And the National Labor Relations Board ducked the issue by saying Kingston is still good, but this case involves state prevailing wages, not federal. So, Kingston constructors still have it. Let me ask you a question about the intervention issue, and it's highlighted by Mr. Smith's stellar performance today. He's arguing the case very ably. He's defended the act very ably. You're in amicus, and we've heard your arguments. Why do we need to let you intervene? Well, under — first of all, I think the primary area the Court made with regard to the twin analysis, you have 24A, CR24A, that's the intervention of right, and CR24B, which is permissive intervention. So let's assume we're dealing with permissive intervention for a second. Given the fine briefs filed by the Attorney General, given the fact that you're in amicus and we've considered your arguments, as has the district court, I think, what's gained by giving you the title of intervener? Well, the district court didn't get to hear my eloquence is one that's got a facetious response. And if we remand, maybe they will. But on a more serious note, I think that the Court erred under both analyses based on the adequacy of representation by the current party. The Attorney General was brought in by the Idaho State Senate to opine on preemption. And we argued before — successfully before both the Senate and the House that with regard to Senate Bill 1007, they were a little too conservative in limiting it to the Davis-Bacon issue. And that in this case, a fairly historic situation with a market recovery — anti-market recovery program passed by a right-to-work state, that Section 14B of the National Labor Relations Act should be referenced and that there's a strong argument that it encompasses this type of what we would argue is compulsory unionism. But you've made that argument and we've heard it. So why do you need to intervene? Well, I think the main issue is that I think that we now have a standing decision by the Federal District Court here under both 24A, but of more concern to us is 24B, permissive intervention, where they borrow as a, quote, discretionary element the adequacy of representation. You're asking a practical question, which is not a — why — in order either A or B to intervene, you have to have some reason to think that your interests are not being fully represented. What is that? Because, again, it's the attorney general in preparing a letter with regard to the preemption issues, and that's found that ER 44 through 50 took, we would argue, a much narrower approach with regard to especially the Senate Bill 1007. But let me focus the piece — But you're arguing there's some 14B connection, which, as the district court demonstrated, doesn't seem like a very strong argument, besides which it's been vetted as here, so what's the problem? Is that the only issue, the only additional issue? No. I think with regard to permissive intervention, we have a real concern with regard to the use of the adequacy of representation as a discretionary element because we don't think it belongs there. CR 24B3, which talks about the, quote, discretionary element that the court can utilize to determine permissive intervention once the initial requirements are met, is limited to undue delay or prejudice, neither of which was found here. So the court trumped both 24A and 24B based solely on the adequacy of representation, and we're concerned about that. We cited the cases in our brief, and very briefly — Can you return to my first question? Because I'm — I mean, it may be that we should let you intervene, and it may be the district court should let you intervene, but I'm trying to figure out what's gained. You're here. You've made the 14B argument. We have the 14B argument. We'll consider the 14B argument. I take it. What's — so what's the problem? What's your beef? Well, the beef is down the road. ABC and various chapters seek intervention status in a variety of situations, and now we have Judge Wendell, again, we would argue misconstruing 24B permissive in trumping both analysis based solely on adequacy. There are cases, and I must say I was there when I was in practice in your position, and the usual answer of the Court of Appeals was it doesn't matter, we're not going to decide. And if we decided that, would you be happy? No. That's why we're here. You've allowed your amicus brief. We'll consider it. And not everyone can walk away happy. Yes. Well, again, I'm looking down the road. We now have — It's yes for an answer. I have a determination, but I appreciate that. You're looking down the road, therefore, it wouldn't be as harmful if we didn't decide the intervention issue. Well, or in a perfect world, decide that you cannot trump both the intervention of right and permissive intervention with inadequacy. To the extent that you're looking down the road and that's your real concern or your substantial concern, you don't want bad law made. Sorry? You don't want what you consider to be bad law made. That's correct. But also, who knows what the Court's going to do with this case. It may remand it. One concern that we had was that the AG in this case might refuse to appeal. Well, once that happens, then you can come in, right? Or you can try and come in again. Well, no. If the motion for intervention was denied, there's a timeliness issue with regard to filing. Now, appellants or, excuse me, proposed interveners have attempted to raise that argument as a basis for intervention, and the Ninth Circuit has held the potential that they may not appeal because they're not interested enough in the matter is not a basis for permissive or for ruling. So we have a timeliness issue. We had to file an appeal right away. I do not believe that to be true. Okay. But it certainly has happened. It certainly happened. Okay. Well, again, there's case after case. The Freedom from Religion Foundation v. Geithner League of United Latin American Citizens and Preet v. Bradbury, where the court determined that under 24A, there was adequacy of representation had been demonstrated, hence no intervention of right, but then had a separate analysis under 24B and didn't, as the lower court hears, simply trump both based on that. If you were allowed to intervene on appeal, would that satisfy your claim? Yes. And that would not require a remand of the case to the district court? That's correct. Are there any more questions on this issue? I'd like to get to the merits by other counsel. Thank you. Your Honors, may it please the Court. My name is James Pietroski. I represent the Idaho Building and Construction Trades Councils, two of them who are plaintiffs, or were plaintiffs in this matter. In trying to come up with a connecting theme to wrap up the whole case, I failed entirely. And so what we have instead is a series of issues that apparently must be decided in a certain order in order to reach the merits of the dispute and to reach what we believe to be the correct conclusion. The doctrine at first espoused in Ex Parte Young is a fairly straightforward one. It provides that for all of us. It seems to me where we are with that is, after the earlier argument, is that a concession that the person you want to add would be a proper person to add if the case is otherwise ripe and or you have standing. So it seems like that's where we should be going. We believe that Attorney General Wansden has a more than adequate connection to the statutes in this case to be a proper defendant under Ex Parte Young. Although it's a strange argument when the Attorney General is saying, I want nothing to do with these statutes. I will never enforce them. I will stay away from them like they are the pestilence in plague. And you're saying, oh, no, he's going to enforce them. That's a strange argument when we apparently have somebody else who the Attorney General says in an appropriate case might enforce them. Why mess around with the Attorney General in this case? It would certainly make sense if one were cautiously minded to simply remand the matter to the district court. Or to do it ourselves. Or to add him ourselves if he's otherwise proper. I have one question about that, though. What is the name of this person, Montgomery? Mr. Mason. Mason. He certainly has authority with regard to state public works projects. Does he have authority with regard to public works projects by local subdivisions? The competitive bidding statute in Idaho applies to the state, to local subdivisions, et cetera. And Mr. Mason has oversight responsibility for that entire system of competitive bidding. Assuming he's the right party, then, why don't you go ask somebody, why don't you go try to negotiate with some locality for a PLA and be turned down? The state seems to think that's a prerequisite. It seems pretty easy because I know they're going to say no. So why don't you ask? The question is why they say no. A local subdivision that simply said thank you but we're not interested in a PLA is not a proper defendant. They could be not interested in the PLA because it doesn't make sense on the particular project, because we haven't made a compelling case that we can deliver a superior workforce, or for any number of other reasons. The reality may well be that they're saying no or that they're making the statement they make because they don't choose to be a defendant. Although the reality is that they've said no for how long has Idaho been a state? Up until now, anyway. So what's the harm from this statute that seems to memorialize the custom of everybody in Idaho? It is the custom of everybody in Idaho to say no to our request. Well, I'm not even, I have a predecessor question. Has there even been a request? Yes. I believe the record indicates that, indeed, there have been requests for PLAs. PLAs have been something that the Building Trades Councils have considered. Certainly, it is something they would like to continue to pursue. Has there been a request to a municipality since this statute was passed? There has not been that we're aware of, nor is there any indication of a record of that. And you say there's something in the record that suggests there has been before that?  I read the declarations. I don't remember seeing it. I do know that the declarations clearly state that we would ask for PLAs. We would continue to pursue PLAs if there were a chance of success. Now, that chance of success, meaning if we thought anyone would take us even at all seriously, which with this law, they won't because they're simply prohibited from doing so. But they weren't before, anyway, is the problem. I mean, this is Idaho. That's your problem. I mean, why the statute was passed is another question. It seems to have been fairly symbolic. The statute was, well, I won't speculate on why the statute was passed. It appears it was passed in order to have a state statute somewhere, and there are a few of them elsewhere, and there's some campaign to get them passed. Even in Idaho, there's great variation in the political reality from county to county and local district to local district. And so, indeed, we have taxing districts at the local level that are a bit more friendly to labor than might be the state government, the state legislature. We have county and city governments that are more friendly than others. Indeed, unfortunately, not off the record, but I do happen to know of circumstances in which, for instance, the city of Boise has been asked to intervene in ways in the local labor market, in the construction trades. This is tied to the merits, and that's why I'm interested in the standing issue. I take it your merits argument, with respect to the Open Access Act, is that somehow you have a federally protected right to lobby not the employer, but the contracting entity to include certain specifications favorable to labor in its bid specifications. And as we suggested in our questions to Mr. Smith, it's a little bit of an indirect argument that you're making. Nobody's preventing you from negotiating with contractors. Nobody's preventing you from organizing. The question is whether the NLRA somehow protects your ability to lobby government to include requirements of PLAs and contracts. Tell me how that's protected by Section 7 or Section 8. There's no question that the Supreme Court, U.S. Supreme Court, has previously determined that indeed the Section 7 right to concerted activity for mutual benefit includes the right to petition government jointly. That's true, but it doesn't include the right to have anybody listen to you, does it? No. I mean, that's what the Minnesota Community College Board says in the First Amendment, and why should the NLRA be different? That's absolutely correct, Your Honor. Nobody's required to listen to us at all, but we have the right to attempt. We have the right to ask. And what the state here has done. They'll say no. What's the problem? They have indirectly made the ask meaningless. Oh, that's true. And any time anybody passes a statute, if you want to go to lobby about same-sex marriage in California, you're not going to get very far unless the Supreme Court case exceeds because the statute says you can't have it. So you can go to any municipality you want. I mean, I understand that the unions may not be that interested in it, but if you were and you went there and they said, sorry, we're not allowed to do this, you can't have a Section 7 problem. The difference being that we do have a Section 7 right to engage in this mutual conduct or this concerted activity for mutual benefit as it relates to the issues that affect labor. All right. So if there's a statute that says you can't discriminate on the basis of race and employment and you're a racist union and you go and you say we think you should discriminate on the basis of race and employment, they say, sorry, we have a statute. You know, we can't do that. That becomes a matter of a minimum labor standard. That becomes a metropolitan life insurance issue of establishing a minimum standard that doesn't relate directly to labor relations, to union relations. Instead, it becomes a minimum wage, like the minimum wage provision. But your argument is essentially that you cannot have a state, otherwise valid state statute, that says anything about any labor issue because you have a right to try and talk them out of it and they can't be found to not be talked out of it. No, Your Honor. That's not our position at all. In fact, the state is free to regulate in this very field with regard to PLAs in certain ways. What it cannot do is regulate in this way, in this blunt method. As all my questions may suggest, I think your machinist argument is a lot stronger and I would go there. So I don't know what you have to say about that. I agree, Your Honor. The machinist argument is stronger on that act. The fact is that Congress intended to allow unions to pursue pre-hire agreements, to pursue PLAs. In fact, when Sections 80 and 8-F were adopted by Congress, project labor agreements were part of the landscape. But let's go back to the question we asked before then. There's nothing in this statute that prohibits you from pursuing a PLA, correct? It prohibits us from pursuing a PLA with a public entity. No, no, but PLAs are obviously not entered into between public entities and unions. They're entered into between public entities and employers and contractors. So the question that we tried to ask earlier, and I'm not sure I know the answer to it, is tell me why it's impossible or difficult or hard for you to enter into PLAs if they're not in the bid specifications. PLAs actually are generally at least three-party agreements between the project owner, the general contractor, and the unions involved. Well, the Ohio and maybe in the Michigan district court opinions, the district court, who did a very nice job, lays out different kinds of PLAs, of which some involve the owner and, according to her, some don't. Sometimes it's just the general contractor or perhaps the construction manager, and I've never really been sure about the difference, but there is a difference. I guess the main difference is the construction manager doesn't employ anybody on the job. They simply run the place. But in either instance, those private entities could enter into this agreement without the owners and sometimes do when you're talking about private owners. Is that right? Yes, that is correct. The pattern in public works contracting ---- Is that before or after they get hired by the ñ they get the bid? I'm sorry, Your Honor, I don't understand. Most of the ñ if you have big jobs, even in the private sector, they're going to be bid. Are the PLAs entered into before the bids are submitted or afterwards? I mean, one problem here is we have no record of any of this, but. And there are variations in that regard as well. There are situations in which a PLA is negotiated after the bidding process begins. There are also examples of the opposite. So it's not ñ I mean, from what you're saying and from what this district court opinion says, it's not out of the question. It is. And without the participation of the government QA owner, you can have a PLA in Iowa. It is not out of the question. So can we go back? I'm still not sure I got an answer to my question, so let me ask it differently. What does this record tell us about your ability to enter into ñ your client's ability to enter into PLAs given this statute? Is there anything in this record that helps us at all? The record tells us next to nothing about that. So I ask the question of your opponent, and I ask you the same question. Is this a triable issue of fact? No, it's not. Well, you agree. Certainly, if, indeed, this court disagrees with our position that the law is preempted entirely, then, indeed, it may become a triable issue of fact. We believe that the summary judgment was correctly decided because, indeed, we have a Section 7 right to request these agreements, to pursue these agreements, because, in fact, the ability to pursue these agreements was meant to be left for machinists free and open. Here's my difficulty with your machinist argument. I think we all agree that if all the governmental entities in Idaho, as apparently they have for time immemorial, said, don't bother us with this, we don't care to do it, and we won't even listen if you call. You can make an appointment to see the mayor, but he won't see you. That would be legal in the absence of a statute. In the absence of a statute, that would be legal. Okay. We're permitted to lose. No, you're permitted to lose. They're permitted to decide in advance that you're going to lose. All the entities and all the political – after all, every subdivision has some political board that controls it or some political entity that controls it, and every subdivision can say, I pledge that as long as I live, my entity will never enter into a PSA. Okay? I believe that would constitute preempted regulation, Your Honor. No, regulation, just – Horny regulation. We're against it. We hate them. We won't do them. They could do that, right? Yes. I haven't given it a lot of consideration, but off the top of my head, yes. A governor of Idaho could run for office and say, as long as I'm the governor of Idaho, when we have public works contracts, we're never going to require a PLA. That's okay. I haven't given it a great deal of thought, Your Honor, at that particular level. I guess my question is, what's the difference if all these people who hate you get together and immortalize it into a statute? What difference does it make? The difference it makes is that it makes official their hatred of us, Your Honor. It's one thing for a party to say, or to think to itself, I just don't like you. And, in fact, a private entity could do that all it wants. I don't like unions. I'm not going to sign a union contract unless I'm forced to. And, in fact, many employers in the private sector do precisely that. And so can a public entity, can it not? No, it can't. The public entity is different, and that's the Supreme Court hold us. As an individual decider, it surely can. There are things that an individual, that a private sector individual can do that the state may not. That could teach you to cause some harm. But the problem here is they say they're not doing that. They say, we're not even saying we won't allow you to work on this project if you have this agreement. We're not saying we hate you that much. We're just saying we're not going to make anybody do this. Right. So why, I mean, the Michigan statute originally has the other provision, which said we're not going to let anybody do it. That's a different story. And even the federal statute I've called an ALBA dealt with five contractors. But this one doesn't deal with private entities. And it simply says that we're not going to require it, but we're going to allow it. Now, so it seems to me that the only thing that could be wrong with that is if that's just a phony. There is no way to do that. Short of that, I don't understand what the problem is. They haven't nearly said we won't stand in the way. What the state has said is that nobody else in the state, nobody else in government in the state at any level. Why isn't the Supreme Court's opinion in the other IOHO case, Eusteros versus Pocatello Education Association, just as positive on the ground that telling your subdivisions what to do is not regulation of any kind. It's just the state acting across state, and it's not the concern of the federal government. I understand that that was a First Amendment issue. So unless you can come up with some reason why the NLRA is different than the First Amendment in that regard, it's gone. It's finished. The First Amendment, of course, is different than the NLRA. Yes, I know, but in what relevant way? The relevant way here is the Eusteros case stood for the proposition that the state was able to intrude into the business workings of local entities and to say you won't participate in a political process, this collection of dues money for PAC purposes, and we have the right to regulate that. This doesn't have anything to do with political purposes. This has to do merely with which contracts will be entered into and which won't. I'm sorry, but for federal purposes, I think what that case may stand for is we treat a state act that regulates its subdivisions simply as if it were an action of the state. It's just one big happy family of governmental entities. And so the question is why can't the state decide as an official matter we'll be neutral with respect to PLAs? We don't want to promote them in a contract, nor do we want to prohibit them. Why can't the state do that? Put aside the local subdivisions for a second, because I think the lesson of that case is we treat them all as the same. So why can't the state and its subdivisions simply say we're going to keep an open mind with respect to these agreements. We're neither going to require them nor prohibit them. What's wrong with that? That's exactly what we believe the state should be doing. It should be evaluating these PLAs on a case-by-case basis. No, no. What the state is saying in this case is that our bid specifications will not be the mechanism by which we decide whether or not these make sense or not. We may decide, as Judge Reinhart asked before, that once we evaluate all the responses, the ones that promise labor peace may turn out to be better than the other ones. But we don't want to make that decision in advance. What's wrong with that under the National Labor Relations Act? I'm not sure I understand Your Honor's characterization, but what's wrong with it is that it is regulation of an area that Congress intended to leave unregulated. Your first positive, as I understand it, is that what's being regulated is the local entities. But I'm having problems with that because of you, Sirsa. So what else is being regulated? And your next positive is what's being regulated is your ability to talk to the lobby, but I'm having problems with that. So what else is being regulated? I have to disagree with the premise, Your Honor. In Wisconsin v. Gould, what was regulated was the state's own coffers, the state's own agencies, nothing else. There was no private regulation. There was no regulation of what anybody did other than the state itself. The court looked at it as regulating the private contractors by essentially punishing them for violating the National Labor Relations Act. That's what they were looking at. They were not looking at regulating the sub-entities of the state. They saw it as regulating, whatever you may think of their conclusion, as regulating the private entities. So the question is what private entities are being regulated here? Unions are being regulated. This statute is clearly directed at telling unions, labor organizations as defined in the NLRA, that they may not enter into these types of agreements. There is no law in Idaho saying we cannot set a maximum wage rate or a maximum benefits level. There is only a law saying we cannot set a wage rate or benefit level that would help unions. And that's the nature of this statute. So who they are regulating, they are doing it indirectly, but they are regulating the ability of unions to enter into project labor agreements. Plainly and simply. Not all of them, but some of them. We may enter into private sector project labor agreements. We may enter into federal sector project labor agreements. We may only not enter into state level project labor agreements. This doesn't affect the entities that don't do PLAs. Why do you say that it regulates unions because they may not enter into PLAs? It does indirectly what it would be prohibited from doing directly. A statute that said unions may not enter into these agreements would be clearly preempted. What they've done instead is they've said the other party may not enter into these agreements. Well, because you're saying that no private contractor is going to enter into that agreement, because what? Because if they do, no public entity will select them? No. Private contractors may well enter into those agreements. And, indeed, we have ANSI, you know, OICOP provisions. When I say private contractors, I mean private contractors who intend to contract with a public entity. Even so, it is possible that a private contractor might bid as a general contractor pursuant to its own PLA with a union. Sure. And that's the question. Right. What it prevents us from doing is taking that agreement directly to the public entity. This is a facial challenge. Correct. So don't you have to demonstrate that the Act would be preempted in all of its applications? Yes, Your Honor, and we believe it is. The ability to enter into that PLA with the public entity is a part of our Section 7 rights or is a part of what Congress left unregulated. But the public entity is not itself subject to the NLRA, right? That's right. It's not an employer under the NLRA. It's not subject to the NLRA. It can interfere with the rights protected by the NLRA, which is what leads to cases like Hould and Chamber of Commerce v. Brown and so on. So what I need help with is understanding how the public entity, by essentially not intruding itself, saying, you know, we don't care what the private parties do. That's what they're representing they're saying. Now, either you have to say, well, that may be what they're saying, but it's a fraud, and it doesn't really work that way, or you have to give us some reason why, nonetheless, in fact, the private employer-employee relationship is being interfered with. What is that? In the construction industry, the rights espoused are created in the NLRA are not limited to the employer-employee relationship. Section 8A and 8F. It's not limited to private parties acting in Wilkie and Romero and so on. The conclusion is that the general contractor can impose these pre-hire agreements on its subcontractors, but the general contractor is still an employer of employees in the construction industry ordinarily. I remember there being a lot of arguments about whether they had to have one employee or two employees or whatever. They're not, and I don't even know what would happen if you had owners who were not in fact, and I wondered about that, I'd forgotten the outcome of that. Maybe you can tell me. If you have an owner, a private owner who is not an employer of employees in the construction industry, but they can still enter PLAs, I assume. Yes, Your Honor. But still, so if there were a regulation of that, are those people different or the same as public owners? We believe they're the same as public owners. There's no case directly on point. If there were, we wouldn't likely be here. What we have, though, is we have the Golden State cases where the rights under Section 7 are protected against state and local government intrusion. We have the East Tech case which says Section 7 rights extend to things well beyond the employment relationship. We have the Gould and Brown cases saying, again, state activity, even when it's not in an employment relationship with the workers, is preempted. We've got Boston and Farber that clearly says, even things that a private employer would be permitted to do, a state is not permitted to do. There's a lengthy discussion on Boston and Farber to that effect, that while a private employer could say, I am never going to sign a PLA, the state may not be in that position. But the state is treated differently because it is the state. And that's what we have here is a private sector construction owner could say, I won't do a PLA ever. To go back to Boston and Farber, we had a state. What was the relevant state regulation? Remind me. In Boston and Farber, the state had included a bid specification requiring entry into the PLA by anyone bidding on the job. Right. And so all that Boston and Farber said was that that's okay if it's done in a proprietary, not a regulatory manner. States are allowed to do that. I'm trying to figure out how you get out of Boston and Farber that states are required to do that. We are not taking the position that they're required. But you are saying that a state can say, can't say, I don't want to do it. It's different from saying you're, it strikes me as different from saying that a state is allowed to do something as opposed to allowed to prohibit something. So tell me why Boston and Farber carries over to this circumstance. Boston and Farber should be read for the proposition that the state can't simply say I'll never do it or I will always do it. Because that would be regulation and therefore preemptive. But isn't all that Boston and Farber says is that the state can do it? Well, in other words, it's permissive. It's not, if the state chooses to, it may. If the state chooses not to, it may not. And isn't the state of Idaho just choosing all at once that it may not? The state of Idaho is saying we never will under any circumstances. Unless, I mean, view it differently. Statutes come and go. If the state were to make this decision, as you said before, politically it would be okay. Why isn't this just a political decision by the state not to do it pending a change in regime? Because what they've actually done is regulate, not make an economic decision, not make an individual decision. State action moves from this is the purpose of the market participant doctrine. If the state is a market participant and says we don't want to do that, it's one thing. If the state says it will never happen, we're going to regulate this field, it's another thing entirely. Can you address the other act, if you would, please? Sure. The market recovery program is, those programs are protected. The NLRB has spoken clearly on that. The only remaining argument there is whether somehow if those programs are funded in part by dues collected on Davis-Bacon jobs, they become unprotected. There simply is no decision to that effect. What about CROSN? CROSN stands for the proposition actually that using little Davis-Bacon money absolutely does not lose protection. That's the holding of CROSN. In DICTA, it says, well, this might be different in the federal context, in the Davis-Bacon context. But there's certainly no holding that a, what is a clearly protected activity moves over to clearly unprotected because of the source of the funds. And does CAN-AM leave it open in your view? CAN-AM simply stands for the proposition that, in fact, the board believes there's a great deal of protection for market recovery programs. The board thought there was. The D.C. Circuit said, I'm not so sure. And the board said, ha-ha, we don't have to decide here. I mean, that's a little bit of a sarcastic summary. But essentially what happened, right? Accurate within the bounds of sarcasm, Your Honor. Yes. But CROSN actually held that even if it's illegal under state law, it is protected. That's correct. CROSN holds that the activity was protected despite the illegality under state law. So despite a finding by an Ohio court that the collection of the dues was unlawful. My question backtracks a little. What is the, I know there was an Ohio Supreme Court case. Was there a sharp position in that case? You know, the, the, I don't know, Your Honor. I'm sorry. And what about the Michigan case? Has that gone to the Sixth Circuit? Has it gone to the Sixth Circuit? Do you know where that is? That decision is still fairly fresh is my recollection. I'm not sure of the status of that one either. I would presume that because both of those cases involve parties closely related to the parties in this case, that appeals will be sought. But as of the moment, all we have are the trial court decisions. The Idaho case, the Ohio case is somewhat older, is it not? The Ohio case is somewhat older. So we're going to pursue it. There may be some pending, but I just don't know. Let me ask you one more question on an unrelated topic. Why don't you want Mr. Lee's to intervene? Do you care? Your Honor, we don't want Mr. Lee's to intervene simply because we want to keep the case as straightforward as possible. Additional parties complicate it. It's a simple preference for streamlined litigation. It doesn't go any farther than that. That said, we don't believe the court abused the district court's discretion, nor do we believe there was intervention as of right because of the adequacy of representation. In terms of the interest of the intervener, there were the proponents of these statutes. Other than that, what is their interest? Your Honor, I would assume they have some... I guess they think that if there were public PLAs, their contractors wouldn't get the job because they prefer not to enter into these agreements. And it's not, it keeps being said in these cases, and it was said to the legislature, that the impact of this is that people who don't belong to unions can't work on jobs that have PLAs. That's not true, is it? No, that's not true. Idaho is indeed a right-to-work state, which means even a PLA may not include a membership requirement. The most it could include is a hiring hall requirement, and indeed hiring halls in the state of Idaho include non-members. They have to have non-members by federal law. They have to have non-members. Yes. Right. Yes. Today there are workers on jobs referred by union hiring halls who are not members of their unions. So one problem with the whole open access notion here is that it's really premised on an erroneous view of federal labor law. To some extent it does appear to be so. The arguments in the Idaho legislature seem to focus on the fact that there was some 7.5 percent of the market that was still held by union contractors, and this was perceived to be a bad thing. What, you know, the actual problem being addressed was never made very clear, particularly in respect to the prohibition on job targeting or market recovery programs. It's true that any particular contractor couldn't enter into a PLA agreement. I think many contractors, members of the agency, don't want to enter into union contracts, but there is nothing about a requirement that there be PLA that says who can enter into them. We have a PLA at the Idaho National Laboratory. It's governing construction work. It's a federal PLA, and so it's not affected by this lawsuit at all or by the statute here. But it's a fairly standard federal sector construction PLA under which numerous nonunion contractors work. They pay prevailing wage, essentially, and by agreeing to do so, they're able to comply with the PLA. Your Honor, the district court reached the correct decision, and we encourage affirming. Thank you, counsel. I think we've about reached the end, unless one of you or each of you wants one minute exactly. Your Honor, I have a couple of factual questions. If you can do it in a minute. I'll do my best. Administrator Mason has no responsibility for the contracting practices of local government entities. The excerpts of record at 178-80 summarize the contracting provisions in Idaho. He has no responsibility, you say, with respect to local? That's correct. But he would be an appropriate defendant with respect to the enforcement of this statute by the State itself? That's correct. Right these concerns aside. Right, right, right. There have been no requests, at least as reflected in the record, for public works project labor agreements. The Michigan litigation, I mean, the Sixth Circuit has scheduled argument in that case next month. I'm sorry, when? The Sixth Circuit has scheduled oral argument. Yes, when? In the Michigan case next month. Next month, okay. And finally, cert was denied in the Ohio case, 1978. Thank you. Thank you. Very helpful. Just to read two things. One is the Croson case, the September 2012 359 NLRB No. 2. The board there held further there is no evidence that any of the funds collected by the union for its job targeting program from employees of charging party or from any other participating employer were derived from wages earned on projects subject to the Davis-Bacon Act. Thus, uniform precedent holding job targeting programs protected except for projects covered by the Davis-Bacon Act compels our conclusion that the program at issue here was clearly protected under the NLRA. That's the board. And then we have the admission. Although apparently you can't identify uniform precedent prior to Croson. The Kingston was. That's the reason for that language in there. They had to carve out Kingston and preserve that. So that's still good law. So we're just back in the same place. Thank you, Your Honor. Thank you, counsel. Thank you all. Interesting, able argument. The case will stand submitted. The court will stand in recess for the day.
judges: Reinhardt, Berzon, Hurwitz